UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WADIA PHILLIP, | Civil No. 11-2468 (NLH/KMW) |
| Plaintiff, |  |
| v. | **OPINION** |
| ATLANTIC CITY MEDICAL CENTER, et al., |  |
| Defendants. |  |

**APPEARANCES:**

Wadia Phillip
1932 Cologne Avenue
Unit M-12
Mays Landing, New Jersey 08330
    *Pro Se*

Eric M. Wood, Esquire
Fox Rothschild LLP
Midtown Building
1301 Atlantic Avenue
Suite 400
Atlantic City, New Jersey 08401
    *Attorney for Defendants AtlantiCare Health System, Inc., J.
    Merendino, R.N., Ellen C. Angtuaco, R.N., Jean Craig, R.N.,
    Barbara Bergman, R.N., and Teri Scheider*

Timothy M. Crammer, Esquire
Crammer, Bishop, Marczyk & O'Brien, PC
508 New Jersey Avenue
Suite B3
Absecon, New Jersey 08201
    *Attorney for Defendant Dr. Jonathan Gewirtz, M.D.*

**HILLMAN, District Judge**

    Presently before the Court are three motions [Doc. Nos. 18,

19, 25] for summary judgment[1] by several Defendants seeking
dismissal of Plaintiff's complaint.  Plaintiff has not filed a
formal opposition to any of the pending motions.[2]  The Court has

---

1.  While all three motions are captioned as motions for summary
judgment, the motions indicate that Defendants seek to dismiss
Plaintiff's complaint pursuant to Federal Rule of Civil Procedure
12(b)(6) for failure to state a claim upon which relief can be
granted.  Because Defendants attached matters outside the
pleadings to the present motions, Defendants denominated the
motions as summary judgment motions in accordance with Rule
12(d).  (See Def. Gewirtz's Br. in Supp. of Mot. for Summ. J.
[Doc. No. 18-4] 1; Defs. AtlantiCare Health System, Inc., Craig,
Merendino, and Scheider's Br. in Supp. of Mot. for Summ. J. [Doc.
No. 19] 1; Defs. Bergman and Angtuaco's Br. in Supp. of Mot. for
Summ. J. [Doc. No. 25-1] 1.)

2.  Although Plaintiff did not submit a formal opposition to
Defendants' motions, Plaintiff produced for ex parte, in camera
review several confidential documents, including but not limited,
to originals and copies of her medical and psychological records,
as well as court documents from a 1994 New Jersey Superior Court
case.  Given the sensitive nature of most of these documents and
their in camera status, the documents were not filed on the
public docket.  The Court later confirmed with Defendants that
Plaintiff did not serve copies of these documents on any
Defendant.
     By letter dated September 30, 2011, Plaintiff informed the
Court that she submitted these documents, otherwise entitled as a
"Motion [for] Wrongful Death," on September 2, 2011, in order for
the Court "to review all of these records and reports for the
motion the defendants enter[ed] for dismissal of a[n] old summary
judgment from June 1996."  (Letter from Pl. dated Sept. 30, 2011
[Doc. No. 27] 1.)  Plaintiff also set forth that she "need[ed]
these documents to be reviewed at the motion the defendant filed
on October 3rd 2011."  (Id. at 2) (emphasis omitted).  Although
Plaintiff's letter is inartfully drafted and predates any alleged
October 3, 2011 filing by Defendants, the Court liberally
construes the September 30, 2011 letter as a request for the
Court to review these documents and consider them as opposition
when ruling on the pending motions to dismiss.
     For the reasons set forth infra, the Court deems it
unnecessary to review these documents in camera or rely on them
in any manner in order to rule on the present motions based on
the determination that the Court lacks subject matter

considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, the pending motions [Doc. Nos. 18, 19, 25] are granted in part, and denied without prejudice in part.

I.   **<u>BACKGROUND</u>**

**A. Plaintiff's Original Complaint and Amended Complaint**

Plaintiff's original complaint in this action was received by the Clerk of Court on April 29, 2011, along with her application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.  (<u>See</u> Compl. [Doc. No. 1], IFP Application [Doc. No. 1-1].)  By Order dated June 2, 2011, the Court granted Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and directed the Clerk to file the complaint in this matter.[3]  (Order [Doc. No. 5] 1, June 2, 2011.)  After summonses were issued, but prior to the time the original complaint was served, Plaintiff filed an amended complaint on June 13, 2011.  (<u>See</u> Am. Compl. [Doc. No. 8].)

The original complaint, received by the Court on April 29, 2011, consists of the following: (1) the first page of a hand-

---

jurisdiction over Plaintiff's claims.  Moreover, in light of the sensitive nature of the documents, the dismissal of Plaintiff's claims, and the fact that many of the documents are original copies belonging to Plaintiff, the Court will direct the Clerk of Court to mail these documents back to Plaintiff.

3.  The Court further ordered that the United States Marshal serve the complaint, summons, and a copy of the June 2, 2011 Order on Defendants.  (Order [Doc. No. 5] 1, June 2, 2011.)

written complaint for medical malpractice dated May 16, 1994 against Atlantic City Medical Center and Atlantic Women's Care, a complaint which Plaintiff previously filed in the Superior Court of New Jersey Law Division in Atlantic County, docket number ATL-L-001916-94, (see Compl. 1); (2) a four-page typed "Statement of Facts" which, as far as the Court can discern, is taken from a previous submission Plaintiff filed on appeal to the New Jersey Superior Court Appellate Division, (see id. at 2-5);[4] (3) a one-page document consisting of four ultrasound pictures dated March 3, 1992 taken for Plaintiff at Atlantic City Medical Center, which appear to identify the "head" and "body" of a fetus, (see id. at 6); and (4) a medical chart, the nature of which is not specified and the Court is unable to determine at this time. (See id. at 7.)

In the June 13, 2011 amended complaint, under "Title of Action," Plaintiff entitled her case as one for "wrongful death." (Am. Compl. 1.)  As set forth in the amended complaint, Plaintiff named the following Defendants: AtlantiCare Health System, Inc.;[5]

---

4.  The Court concludes that this "Statement of Facts" was submitted to the Appellate Division based on Plaintiff's reference to herself in the "Statement of Facts" as the "plaintiff-appellant."  (Compl. 2.)

5.  Apparently improperly plead as "Atlantic City Medical Center."  Any reference to Atlantic City Medical Center in this Opinion should therefore be construed as a reference to Defendant AtlantiCare Health System, Inc.

Dr. Wayne G. Danclar, M.D., OB/GYN; Dr. Jonathan Gewirtz, M.D.;[6]

Dr. Allan R. Wentt, M.D.; Elizabeth Huges, R.N.; Susan Reber;

Clara Brown, R.N.; Diane Sutherland, R.N.; J. Merendino, R.N.;

Jean Craig, R.N.; Barbara Bergman, R.N.; Tracie M Ferra, R.N.;

Ellen C. Angtuaco, R.N.;[7] F. Florio; and Teri Scheider.[8]   (Id.)

### B.   Plaintiff's Allegations[9]

_____

6.   Apparently improperly plead as "Dr. Johnathan Gewirtz, M.D."

7.   Apparently improperly plead as "Ellen C. Angtonor, R.N."

8.   Apparently improperly plead as "Terry Shieder."

9.   Generally, once an amended complaint is filed, the amended complaint is the operative pleading and it replaces all prior versions of the complaint.  Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit.") However, because Plaintiff is proceeding pro se in this action, the Court must construe Plaintiff's complaint and any additional submissions liberally.  Wallace v. Fegan, No. 11-3572, 2011 WL 6275996, at *1 (3d Cir. Dec. 16, 2011) ("Pleadings and other submissions by pro se litigants are subject to liberal construction[.]) (citing Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011)).
    In reviewing Plaintiff's amended complaint, the Court notes that the amended complaint is only two pages in length, and consists of a civil action form complaint wherein Plaintiff merely "filled in the blanks" on the form to provide information on the parties, the Court's jurisdiction, Plaintiff's cause of action, and her demand.  (Am. Compl. 1.)  Give the minimal amount and the basic nature of this information, it appears to the Court that Plaintiff filed the amended complaint with the intention of supplementing her original complaint, not superseding it.  While Plaintiff's amended complaint adds an additional claim for wrongful death, the detailed factual allegations in support of Plaintiff's claims are set forth in the original complaint. Given Plaintiff's pro se status, the Court liberally construes both the original complaint and the amended complaint and considers these documents together in ruling on the pending motions.  See Dukes v. Lancer Ins. Co., No. 08-4948, 2009 WL 3128467, at *1 n.2 (D.N.J. Sept. 24, 2009).

As set forth in the original complaint, Plaintiff alleges
that in December of 1991, she went to the emergency room at
Atlantic City Medical Center for treatment of lower back pain.
(Compl. 2.)  As a result of her examination, Plaintiff learned
that she was approximately seventeen (17) to eighteen (18) weeks
pregnant at that time.  (Id.)  Several months later, in early
March of 1992, Plaintiff was again hospitalized at Atlantic City
Medical Center apparently for "preterm labor" and "abdominal
spasms, back pain and a migraine headache[.]"  (Id. at 1-2.)
Plaintiff alleges that after a series of ultrasounds during her
March 1992 hospital stay, she was "diagnosed" as being pregnant
with twin fetuses.  (Id. at 1-3.)

Plaintiff asserts that she "carried [the] identical twin
babies for seven and a half months[,]" (see Am. Compl. 1), and
that on approximately May 15, 1992, following a clinic
appointment with Defendant Gewirtz, Plaintiff was again
hospitalized at Atlantic City Medical Center.  (Compl. 3.)
According to Plaintiff, at the time of this third
hospitalization, she was thirty-two (32) weeks pregnant, had gone
into labor, and was having contractions approximately five
minutes apart.  (Id.)  Plaintiff was apparently in labor from
sometime in the afternoon of May 15, 1992 through the early
morning hours of May 16, 1992.  (Id. at 2-4.)  Plaintiff contends
that during the course of her labor, Defendants gave her an

intravenous medication known as Demerol.  (<u>Id.</u> at 4; Am. Compl.
1.)  After receiving the Demerol, Plaintiff alleges she felt
sleepy and inebriated, suffered from nausea, began
hyperventilating, and suffered from a "drastic" increase in blood
pressure.  (Compl. 4.)

Plaintiff contends that after her reaction to the Demerol,
she was told that she was "having only one baby and one
fibroid"[10] and that Defendants needed to conduct an x-ray.  (<u>Id.</u>)
Plaintiff asserts that although she previously felt both fetuses
"kicking and actively moving" during her pregnancy, at the time
of the x-ray, Plaintiff contends that she "watched the ultrasound
screen and saw that [B]aby B wasn't moving and was completely
still."  (<u>Id.</u> at 4.)  Subsequently, Plaintiff's labor progressed
toward delivery, and Plaintiff began "bearing down to force the
babies out of her uterus."  (<u>Id.</u>)  According to Plaintiff, Baby A
was delivered without issue.  (<u>Id.</u>)  Similarly, Plaintiff
contends that the placenta was also removed without issue
immediately after Baby A was born.  (<u>Id.</u>)

However, Plaintiff alleges that the Demerol resulted in the

_____

10.  Although not alleged in Plaintiff's submissions, the Court
notes that "[u]terine fibroids are noncancerous growths of the
uterus that often appear during ... childbearing years. ...
[M]ost [women]  are unaware of them because [the fibroids] often
cause no symptoms. [A] doctor may discover fibroids incidentally
during a pelvic exam or prenatal ultrasound."  Mayo Clinic Staff,
<u>Uterine Fibroids - Definition</u>, The Mayo Clinic (Mar. 10, 2012),
http://www.mayoclinic.com/health/uterine-fibroids/DS00078.

babies going into "distress [during labor] causing 'Baby B' to die" in utero. (Am. Compl. 1.) Thus, Plaintiff alleges that after the delivery of Baby A and the initial removal of the placenta, Defendants informed Plaintiff that there was additional placental matter in her uterus which needed to be removed. (Compl. 5.) Plaintiff asserts that Defendants gave her additional medication which made her sleepy, but that just before she passed out, she saw Defendant Danclar deliver Baby B and wrap the "dead baby" in hospital paper. (Id.) Plaintiff now alleges that the "doctor murdered 'Baby B' and never told [Plaintiff] what he did with her body." (Am. Compl. 1.)

Based on the allegations of the original and amended complaints, it appears that Plaintiff brings, at a minimum, claims for wrongful death and medical malpractice in the present action. As set forth in her "Demand," Plaintiff seeks to "[b]ring everyone back in the courtroom so that [the truth] can be revealed, so that Justice can prevail[,] [a]nd to get my damages of $20,000,000, for punitive and compensatory" relief. (Am. Compl. 1.)

## II.  <u>**JURISDICTION**</u>

Plaintiff does not allege a specific basis for the jurisdiction of this Court in either the amended or original complaints. Plaintiff merely asserts, under the section of her amended complaint entitled "Jurisdiction" that "[t]he doctor

murdered 'Baby B' and never told me what he did with her body."
(Am. Compl. 1.)

III. **PENDING MOTIONS**

As set forth underline supra, currently pending before the Court are three motions to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[11]  The first motion [Doc. No. 18] was filed by Defendant Dr. Jonathan Gewirtz, M.D. Defendant Gewirtz argues initially that the Court lacks subject matter jurisdiction over the claims in Plaintiff's complaint. (Defendant Gewirtz's Br. in Supp. of Mot. for Summ. J. [Doc. No. 18-4] 3-4.)  According to Defendant Gewirtz, Plaintiff's complaint can be interpreted to assert three potential claims: (1) a state law claim for negligence for allegedly misdiagnosing a twin gestation; (2) a state law claim for wrongful death stemming from allegedly negligent or intentional conduct resulting in the death of Baby B; and (3) a state law claim for

_____

11.  Because Defendants attached matters outside of the pleadings, these motions were denominated as summary judgment motions.  However, it is clear from the motions that Defendants are moving to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), not Rule 56.  It appears to the Court that Defendants seek dismissal of Plaintiff's claims pursuant to Rule 12(b)(6) and alternatively seek the entry of summary judgment in their favor in the event the Court relies on documents outside of the pleadings and thus converts the motions to dismiss into motions for summary judgment.  As the Court does not rely on these documents, the Court rules on these motions pursuant to Rule 12(b).

negligent and/or intentional in improperly handling a corpse. (Id. at 3.)

Defendant Gewirtz thus argues that Plaintiff's complaint "fails to state any discernable basis for federal question jurisdiction under 28 U.S.C. § 1331" because the facts set forth in the complaint to not state a federal claim arising under the Constitution, laws, or treaties of the United States. (Id. at 4.) Moreover, Defendant Gewirtz also argues that the Court cannot assert subject matter jurisdiction on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 because it is apparent from the face of the complaint that Plaintiff and at least one Defendant, Defendant Gewirtz, are citizens of the state of New Jersey. (Id. at 3.) Thus, complete diversity of citizenship is lacking in this case. (Id.)

Additionally, Defendant Gewirtz argues that even assuming the Court has jurisdiction over Plaintiff's complaint, her claims must be dismissed because they are barred by the doctrine of res judicata based on the May 1994 action Plaintiff filed in New Jersey Superior Court which alleged the same claims and underlying events Plaintiff alleges in the instant action. (Id. at 4-7.) Defendant Gewirtz further asserts that Plaintiff's action is similarly barred by the statute of limitations for personal injury actions in New Jersey. (Id. at 7.) Defendant Gewirtz argues that Plaintiff's claims should have been brought

within two years from the date upon which she learned that she sustained an injury.  (Id. at 8.)

The second motion [Doc. No. 19] to dismiss was filed by Defendants Craig, Merendino, Scheider, and AtlantiCare Health System, Inc.  The third motion [Doc. No. 25] to dismiss was filed by Defendants Angtonor and Bergman.[12]  The second and third motions filed by these Defendants are virtually identical in form and substance to the motion filed by Defendant Gewirtz, and present the same arguments in support of dismissal made by Defendant Gewirtz.  Accordingly, as these arguments are duplicative of Defendant Gewirtz's arguments, the Court does not set forth the individual arguments of Defendants Craig, Merendino, Scheider, AtlantiCare Health System, Inc., Angtonor, and Bergman in this Opinion.

IV.  **DISCUSSION**

In the present motions, Defendants purportedly seek to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See Def. Gewirtz's Br. in Supp. of Mot. for Summ. J. [Doc. No. 18-4] 1; Defs. AtlantiCare Health System, Inc., Craig, Merendino, and Scheider's Br. in Supp. of Mot. for Summ. J. [Doc. No. 19] 1; Defs. Bergman and Angtuaco's Br. in Supp. of Mot. for Summ. J. [Doc. No. 25-1] 1.)  However, each of

---

12.  The Court notes that several Defendants named in this action have not yet entered an appearance and therefore have not moved to dismiss Plaintiff's claims.

the three pending motions asserts that the Court lacks subject matter jurisdiction over Plaintiff's complaint. (See Def. Gewirtz's Br. in Supp. of Mot. for Summ. J. [Doc. No. 18-4] 3-4; Defs. AtlantiCare Health System, Inc., Craig, Merendino, and Scheider's Br. in Supp. of Mot. for Summ. J. [Doc. No. 19] 3-4; Defs. Bergman and Angtuaco's Br. in Supp. of Mot. for Summ. J. [Doc. No. 25-1] 3-4.)

The Court notes that "Federal Rule of Civil Procedure 12 governs a court's decision [generally] to dismiss a claim based on the pleadings." Baker v. Inter Nat'l Bank, No. 08-5668, 2012 WL 174956, at *4 (D.N.J. Jan 19, 2012). Although not cited by Defendants in this action, "Federal Rule of Civil Procedure 12(b)(1) [specifically] governs a court's decision to dismiss a claim for 'lack of subject matter jurisdiction' [whereas] Federal Rule of Civil Procedure 12(b)(6) governs a court's decision to dismiss a claim for failure to state a claim upon which relief can be granted." Id. Accordingly, the present motions are governed by both Rule 12(b)(1) and Rule 12(b)(6).[13]

_____

13. As set forth infra, because the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims, the Court is without authority to decide this case on the merits. In re Orthopedic "Bone Screw" Prods. Liab. Litig., 132 F.3d 152, 155 (3d Cir. 1997) ("If a court ... determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It has no authority to do so.") Therefore, the Court lacks authority to determine whether Plaintiff's complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) based on Defendants' res judicata and statute of limitations arguments. Accordingly, the Court sets forth the legal standard governing

**A.    Standard for 12(b)(1) Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(1) challenges the existence of a federal court's
subject matter jurisdiction.  "When subject matter jurisdiction
is challenged under Rule 12(b)(1), the plaintiff must bear the
burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656
F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v.
Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A motion to dismiss for lack of subject matter jurisdiction
may either (1) "attack the complaint on its face" or (2) "attack
the existence of subject matter jurisdiction in fact, quite apart
from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n,
549 F.2d 884, 891 (3d Cir. 1977).  "The defendant may facially
challenge subject matter jurisdiction by arguing that the
complaint, on its face, does not allege sufficient grounds to
establish subject matter jurisdiction." D.G. v. Somerset Hills
School Dist., 559 F. Supp. 2d 484, 491 (D.N.J. 2008).  On a
facial attack, "the court must consider the allegations of the
complaint as true." Mortensen, 549 F.2d at 891.  "A defendant
can also attack subject matter jurisdiction by factually
challenging the jurisdictional allegations set forth in the
complaint." D.G., 559 F. Supp. 2d at 491.

Upon a factual attack, by contrast, the court need not

_____

only Rule 12(b)(1) motions.

presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891.  Moreover, when considering a factual challenge to the Court's jurisdiction under Rule 12(b)(1), the Court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. U.S., 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891).  The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed. D.G., 559 F. Supp. 2d at 491.

Moreover, as the Third Circuit has held, "[f]ederal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, 'it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits.'" Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (citing Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n., 554 F.2d 1254, 1256 (3d Cir. 1977)).  Accordingly, federal courts have an independent obligation to address issues of subject matter jurisdiction sua sponte and may do so at any stage of the litigation. Adamczewski v. Emerson Elec. Co., No. 10-4862, 2011 WL 1045162, at *1 (D.N.J. Mar. 22, 2011) (citing Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999),

14

overruled on other grounds by Exxon Mobil Corp. v. Allapattah
Servs., Inc., 545 U.S. 546 (2005)).

**III.  <u>ANALYSIS</u>**

Plaintiff does not assert in either the original complaint
or the amended complaint the purported basis supporting the
exercise of this Court's jurisdiction over her claims.
Plaintiff's only jurisdictional allegation asserts that "[t]he
doctor murdered 'Baby B' and never told me what he did with her
body."  (Am. Compl. 1.)  Accordingly, in light of Plaintiff's <u>pro</u>
<u>se</u> status and construing both the original and the amended
complaints liberally, <u>see Wallace</u>, 2011 WL 6275996, at *1, the
Court considers whether Plaintiff asserts a valid basis for the
Court's jurisdiction pursuant to either 28 U.S.C. § 1331, federal
question jurisdiction, or 28 U.S.C. § 1332, diversity of
citizenship jurisdiction.

**A.   Jurisdiction Under 28 U.S.C. §§ 1331, 1332**

Even though Plaintiff's complaint is held to a less
stringent standard than formal pleadings drafted by lawyers, <u>see</u>
<u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), Plaintiff, as
the party "asserting jurisdiction[,] bears the burden of showing
that the case is properly before the court at all stages of the
litigation."  <u>Schneller ex rel. Schneller v. Crozer Chester Med.</u>
<u>Ctr.</u>, 387 F. App'x 289, 292 (3d Cir. 2010) (citing <u>Packard v.</u>
<u>Provident Nat'l Bank</u>, 994 F.2d 1039, 1045 (3d Cir. 1993)).  Under

28 U.S.C. § 1331, "[f]ederal question jurisdiction arises where federal law creates the cause of action, or where the complaint, on its face, poses a federal question." Schneller, 387 F. App'x at 292 (citing Club Comanche, Inc. v. Gov't of Virgin Islands, 278 F.3d 250, 259 (3d Cir. 2002)); see also Jayme v. MCI Corp., 328 F. App'x 768, 770 (3d Cir. 2008) ("For purposes of federal question jurisdiction, '[a]n action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.'") (citation omitted).

By contrast, "[t]o establish diversity jurisdiction under 28 U.S.C. § 1332(a), the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." Schneller, 387 F. App'x at 292.  In this regard, a plaintiff relying on diversity of citizenship as the asserted basis for federal jurisdiction "'must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant[s] are citizens of different states.'" Gay v. Unipack, Inc., No. 10-6221, 2011 WL 5025116, at *4 (D.N.J. Oct. 20, 2011) (citation omitted).  Thus, the Court may properly dismiss a complaint for lack of subject matter jurisdiction in the absence of complete

16

diversity -- i.e., where the plaintiff and any defendant are citizens of the same state.  Schneller, 387 F. App'x at 292 (affirming district court's determination that it lacked diversity jurisdiction where plaintiff and eleven defendants were citizens of the same state).

Moreover, as both the Supreme Court and the Third Circuit have recognized, "'[i]t is ... well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such required diversity of citizenship is **fatal and cannot be overlooked by the court**, even if the parties fail to call attention to the defect, or consent that it may be waived.'" Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n, 554 F.2d 1254, 1256 (3d Cir. 1977) (citing Thomas v. Bd. of Trs. of Ohio State Univ., 195 U.S. 207, 211 (1904)) (emphasis added).  Thus, the Court can only "properly determine whether complete diversity of the parties in fact exists and thus whether the Court has jurisdiction to adjudicate the matter[,]" when the plaintiff, even if proceeding pro se, affirmatively pleads facts regarding the citizenship of individual defendants and the dual citizenship of corporate defendants.  Poling v. K. Hovnanian Enters., 99 F. Supp. 2d 502, 515 (D.N.J. 2000).  Therefore, a court may also properly dismiss a complaint where the plaintiff fails to allege sufficient facts for the court to evaluate whether diversity of

citizenship exists.  See Poling, 99 F. Supp. 2d at 515-16
(dismissing, in its entirety, action by pro se plaintiffs for
lack of subject matter jurisdiction where plaintiffs failed to
allege sufficient facts for the court to evaluate the existence
of diversity jurisdiction).

**B.    Absence of Jurisdiction Over Plaintiff's Claims**

Here, Defendants facially challenge the Court's jurisdiction
arguing that it is apparent from the face of Plaintiff's
complaint that the Court lacks subject matter jurisdiction
because Plaintiff's purported claims do not arise under federal
law and because the complaint reveals that Plaintiff and
Defendant Gewirtz are both citizens of New Jersey.  (See Def.
Gewirtz's Br. in Supp. of Mot. for Summ. J. [Doc. No. 18-4] 3-4;
Defs. AtlantiCare Health System, Inc., Craig, Merendino, and
Scheider's Br. in Supp. of Mot. for Summ. J. [Doc. No. 19] 3-4;
Defs. Bergman and Angtuaco's Br. in Supp. of Mot. for Summ. J.
[Doc. No. 25-1] 3-4.)  In considering Defendants' facial
jurisdictional challenge, this Court "must consider the
allegations of the complaint as true."  Mortensen, 549 F.2d at
891.

With regard to federal question jurisdiction under Section
1331, the Court cannot discern any claims in either the amended
complaint or the original complaint which arise under the
Constitution, laws, or treaties of the United States.  On its

face, the amended complaint simply asserts that the title of this action is one for "wrongful death."  (Am. Compl. 1.)  Moreover, the original complaint specifically sets forth that it is a "complaint for medical malpractice."  (Compl. 1.)  Construing Plaintiff's complaint liberally and accepting her allegations as true, it is clear that any claims for the alleged wrongful death of Baby B or for any alleged medical malpractice regarding Plaintiff's pregnancy and delivery constitute New Jersey state-law claims because the relief Plaintiff seeks is not expressly granted by a federal law, her claims do not implicate the construction of a federal statute, and her claims do not require the application of federal legal principles for their disposition.  See Jayme, 328 F. App'x at 770.  As such, these claims do not provide an independent basis for federal question jurisdiction.  Further, even construing Plaintiff's complaint liberally as alleging potential claims for negligently misdiagnosing a twin pregnancy and negligently (or intentionally) mishandling a corpse, these claims also constitute New Jersey state-law claims and cannot serve as a sufficient basis for federal question jurisdiction.  See Jayme, 328 F. App'x at 770.  Accordingly, the Court finds that Plaintiff's complaint fails to set forth a sufficient basis for the exercise of federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Having determined that the allegations of Plaintiff's

complaint do not support federal question jurisdiction in this case, the Court now considers whether Plaintiff adequately asserts a basis for the Court to exercise diversity of citizenship jurisdiction over her claims.  Although the Court must construe Plaintiff's pro se complaint liberally and accept Plaintiff's allegations as true on this facial challenge, Plaintiff still bears the burden of asserting jurisdiction and "'must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant[s] are citizens of different states.'"  Gay, 2011 WL 5025116, at *4.

Accepting Plaintiff's allegations as true, the Court notes that in both the original and amended complaints, Plaintiff alleges only that her address is in the State of New Jersey.[14] "[F]or purposes of diversity jurisdiction, citizenship [of an individual] means domicile, not residence." Pierro v. Kugel, 386 F. App'x 308, 309 (3d Cir. 2010) (citing Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972)).  However, at this time, the

---

14.  In the original complaint, Plaintiff avers that her address is 1612 Pacific Avenue, Apartment 330, Atlantic City, New Jersey 08401.  (Compl. 1.)  In the amended complaint, Plaintiff avers that her address is 1932 Cologne Avenue, Unit M-12, Mays Landing, New Jersey 08330.  (Am. Compl. 1.)  It appears to the Court that the Atlantic City address is not likely Plaintiff's present address because the first page of the original complaint is a copy of some portion of the May 1994 complaint filed in New Jersey Superior Court.  It appears that Plaintiff resided at the Atlantic City address at the time the May 1994 complaint was filed, but now resides at the Mays Landing address, as reflected by the docket and Plaintiff's most recent submissions.

Court is unable to determine whether Plaintiff is a citizen of New Jersey because Plaintiff simply lists a New Jersey address for herself, but fails to specifically aver whether she merely resides at that New Jersey address or is a New Jersey domiciliary.[15]  See McNair v. Synapse Group Inc., ---- F.3d ----, No. 11-1743, 2012 WL 695655, at *3 n.4 (3d Cir. Mar. 6, 2012) (recognizing that averments of a party's "residency" -- as opposed to "citizenship" or "domicile" -- are "jurisdictionally inadequate in [a] diversity of citizenship case.")

Turning to the citizenship of Defendants, Plaintiff's amended complaint sets forth addresses for some, but not all, Defendants.  Specifically, Plaintiff asserts that the address for:

(1)   Defendant Danclar is 225 Mozart Court, Riverdale, Georgia;
(2)   Defendant Gewirtz is 1318 South Main Road, Vineland, New Jersey;
(3)   Defendant Wentt is 336 S. Pitney Road, Absecon, New Jersey;
(4)   Defendant Scheider is 1925 Pacific Avenue, Second Floor, Atlantic City, New Jersey;
(5)   Defendant Lock is 1925 Pacific Avenue, Fourth Floor, Atlantic City, New Jersey;
(6)   Defendant Florio is 1925 Pacific Avenue, Atlantic City, New Jersey;
(7)   Defendant Huges is 1325 Baltic Avenue, Atlantic City, New Jersey;
(8)   Defendant Reber is 1325 Baltic Avenue, Atlantic City, New Jersey;

---

15.  The Court recognizes the likelihood that Plaintiff is in fact a citizen of New Jersey, but at this time, the original and amended complaints lack sufficient averments to allow the Court to determine Plaintiff's citizenship.

    (9)  Defendants Brown, Sutherland, Merendino, Craig, and
         Bergman is 1925 Pacific Avenue, Atlantic City, New
         Jersey; and

   (10)  Defendant Atlantic City Medical Center is 1926 Pacific
         Avenue, Atlantic City, New Jersey.

(See Am. Compl. 1-2.)

Although Plaintiff sets forth addresses for these Defendants in the amended complaint, multiple Defendants are listed at the same address, and thus it appears that some of these addresses may represent the addresses of Defendants' employers, and not addresses of the individual Defendants themselves.  As such, these averments are insufficient to allege the citizenship of the individual Defendants because an individual's state of employment is only one factor to be considered in determining the domicile, i.e., citizenship, of an individual.  Bell v. Pleasantville Hous. Auth., 443 F. App'x 731, 734-35 (3d Cir. 2011) (noting that evidence of domicile may include, but is not limited to, "establishment of a home, place of employment, location of assets, and registration of car, and, generally, centering one's business, domestic, social, and civic life in a jurisdiction") (citation omitted).

Moreover, even assuming that these are not employment addresses, merely alleging an address for each Defendant is similarly insufficient to demonstrate a party's citizenship for diversity purposes.  In this case, Plaintiff fails to allege sufficient facts in order for the Court to determine the

22

citizenship of these Defendants.[16]  As a result of these
failures, Plaintiff's complaint is essentially silent as to the
citizenship of the parties, and at this time, the complaint is
subject to dismissal for lack of jurisdiction.  See Gay, 2011 WL
5025116, at *5.  Moreover, complete diversity of citizenship is
not apparent from the pleadings to date, and thus the Court
cannot exercise jurisdiction over this case under Section 1332.
See Burnett v. Lonchar, No. 11-716, 2011 WL 5519720, *3 (D.N.J.
Nov. 10, 2011).

In light of the Court's determination that the complaint
fails to make sufficient allegations to support either the
exercise of federal question jurisdiction or diversity of
citizenship jurisdiction, the Court must dismiss Plaintiff's
complaint without prejudice for lack of subject matter
jurisdiction at this time.  See Burnett, 2011 WL 5519720, at *3-
4.  Accordingly, Defendants motions are granted in part with
respect to their arguments regarding the Court's subject matter
jurisdiction.  However, in the absence of subject matter
jurisdiction, the Court lacks authority to rule on the merits of
Defendants' res judicata and statute of limitations arguments.
Therefore, Defendants' motions are denied without prejudice in

---

16.  The Court again recognizes the likelihood that at least one,
if not many, of these Defendants may be considered citizens of
the State of New Jersey for diversity purposes.  However, the
Court cannot determine the citizenship of these Defendants at
this time without sufficient factual averments by Plaintiff.

part as to the issues of res judicata and the statute of limitations.  Additionally, because the Court lacks jurisdiction over Plaintiff's claims, the Court also denies without prejudice Plaintiff's motion [Doc. No. 33] for appointment of pro bono counsel.

However, because Plaintiff is appearing pro se and because Plaintiff may be able to allege facts sufficient to demonstrate that this Court has subject matter jurisdiction to entertain her state law claims under diversity of citizenship jurisdiction, the Court grants Plaintiff leave to file a second amended complaint within thirty (30) days of the date of this Opinion which properly complies with 28 U.S.C. § 1332.  The second amended complaint must set forth sufficient averments of fact as to Plaintiff's citizenship and the citizenship of each Defendant such that the Court can evaluate whether complete diversity of citizenship exists.  If Plaintiff fails to file the second amended complaint within the time permitted, the Court will direct the Clerk of Court to close the file in this action.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' pending motions [Doc. Nos. 18, 19, 25] to dismiss are granted in part and denied in part.  Plaintiff's motion [Doc. No. 33] to appoint pro bono counsel is denied without prejudice.  The Clerk of Court is also directed to Plaintiff the documents previously submitted for in

camera review.  Plaintiff shall have thirty days from the date of this Opinion to file a second amended complaint in this action. An Order consistent with this Opinion will be entered.


Dated: March 20, 2012            /s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.